FILED
2017 Jul-05  AM 08:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **CHELSEA GENTRY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **CV-2017-** |
| **CITY OF RUSSELVILLE, ALABAMA** | ) | **JURY DEMAND** |
| | ) | |
| **Defendants** | ) | |

---

## COMPLAINT

---

COMES NOW the Plaintiff, CHELSEA GENTRY, and files this Complaint to be answered by the Defendant pursuant to the Federal Rules of Civil Procedure.

### I.   JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, and venue is proper pursuant to 28 U.S.C. §1391.

2. This is a suit authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended by the "Civil Rights Act of 1991", 42 U.S.C. §2000e *et seq,,* 42 U.S.C. 1983 and 29 U.S.C. 207, *as amended.*

3. The jurisdiction of this Court is invoked to secure protection of and redress the deprivation of rights secured by 42 U.S.C. §2000e *et seq.* , 42 U.S.C.

1983, and 29 U.S.C. 207, *as amended,* providing for relief against gender and pregnancy discrimination, and retaliation.

4.  The Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, the "Civil Rights Act of 1991", 42 U.S.C. §2000e *et seq.*

5.  The Plaintiff timely filed her charges of discrimination within 180 days of occurrence of the last discriminatory act. (See Charges of Discrimination attached as Exhibits A and B).

6.  The Plaintiff timely filed her lawsuit within 90 days of his receipt of her "Right –to-Sue" letters from the EEOC. (See Right to Sue Letters attached as Exhibits C and D).

7.  There are no conditions precedent to filing suit under 42 U.S.C. 1983 and 29 U.S.C. 207, *as amended.*

## II.    PARTIES

8.  The Plaintiff, Chelsea Gentry, is over the age of nineteen (19), is a citizen of the United States, and is a resident of Franklin County which is within the Northern District of Alabama.

9.  The Defendant, the City of Russellville, is a municipal corporation organized and existing under the laws of the State of Alabama, located in Franklin County which is within the Northern District of Alabama, and is an entity subject to

suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. 2000e *et seq.*, and 42 U.S.C. 1983

10.  The Defendant employs at least fifty (50) persons for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year within 75 miles of Plaintiff's worksite.

## III.   FACTUAL ALLEGATIONS

11.  The Plaintiff, Gentry, worked for the Russellville Police Department at all times relevant to this Complaint.

12. On **December 2, 2014**, the Plaintiff received her Employee Performance Review by Sergeant Michael Miller which established she had a strong working knowledge on General Orders and the criminal code, she produced the highest quality results in her reports, as she is good at collecting information, and reports are in depth, she communicates well in radio transmissions, she is dependable, maintains presentable appearance, conducts herself in a manner that represents the department well, and has not received any disciplinary action that year.

13.  On **August 2, 2015**, the Plaintiff was promoted to Sergeant, and did receive a pay raise.

14.  At that time, the Plaintiff was the only female Sergeant at the City of Russellville Police Department.

3

15. However, the Plaintiff was treated differently than male Sergeants.

16. Chief Hargett and Captain Prince told the Plaintiff since she was promoted to Sergeant, they were going to do things differently with her.

17. The Plaintiff was not given Advance with GPS for MOVE account, which was given to male Sergeants.

18. The Plaintiff was not given access/supervisor log in to correct reports, which was given to male Sergeants.

19. The Plaintiff's picture was never moved from patrol to Sergeant, as was male Sergeants.

20. The Plaintiff was placed on a year probation, instead of 6 months as was male Sergeants.

21. The Plaintiff was told she would be subjected to supervisor field training, which was not given to male Sergeants.

22. The Plaintiff was repeatedly told about all the difference in treatment, "It's not because you are female".

23. At that time of the Plaintiff's promotion, there was no policy or rule in place regarding supervisor field training.

24. At the time of the Plaintiff's promotion, there was not policy in place regarding promotional probation.

25. On **August 25, 2015**, the Plaintiff was evaluated by Sergeant Michael Miller, her field training officer (FTO), covering only four (4) night's performance, wherein he noted several problems, which were false.

26. Other similarly situated officers who were actually engaged in the offenses listed in the Plaintiff's evaluation were not charged with said offenses or disciplined in any way.

27. Sergeant Miller went to the Academy with the Plaintiff, had the same amount of experience as the Plaintiff, and did not have the requisite years to perform evaluations on Sergeants.

28. Captain Prince advised the Plaintiff he told the FTO's to only find and report on the negative attributes of the Plaintiff's performance.

29. On **October 28, 2015**, the Plaintiff was demoted.

30. On **October 29, 2015**, the City of Russellville issued a new Supervisor Policy Training Program, General Order No. 120.2.

31. On **October 29, 2015**, the Plaintiff's husband, a city employee, spoke with the Mayor about the gender discrimination and harassment the Plaintiff suffered at the hands of the Russellville Police Department.

32. Captain Prince told the Plaintiff her husband needed to keep his mouth shut, he was removed from the Reserve Program, and stated he was no longer

allowed on the premises of the police department unless he had official business "until things cool down".

33. The Plaintiff's husband is a 13 year veteran of the Russellville Fire Department, is a city employee, and is allowed at any city building at any time, for any reason.

34. The Plaintiff's husband never received anything in writing, or orally from the City stating he was banned from the police department.

35. On **November 1, 2015,** the Plaintiff wrote a letter to the Civil Service Board alleging discrimination and harassment by her administration.

36. On **November 4, 2015,** the Plaintiff filed an EEOC charge of discrimination, 420-2016-00306.

37. On **November 9, 2015**, the EEOC notified the employer of the Plaintiff's EEOC charge.

38. Immediately following receiving the charge, the Plaintiff's co-workers were told not to associate with the Plaintiff "until [her] stuff gets settled".

39. After her charge of discrimination, a supervisory officer began detailed surveillance of the Plaintiff's whereabouts, to which no other officers have been subjected to.

40. On **December 1, 2015**, the Plaintiff received an ID card with "Officer Chelsea Gentry".

41. On **December 7, 2015**, the Plaintiff wrote the Council of Russellville, Alabama, requesting to be reinstated due to the fact she had not received due process in her termination.

42. On **December 7, 2015**, the Plaintiff was officially demoted by the Council of Russellville, Alabama.

43. On **December 9, 2015**, the City implemented a job description for Sergeant.

44. On **December 11, 2015**, the Plaintiff wrote the Civil Service Board appealing the decision to demote her.

45.On **December 14, 2015**, the Plaintiff received her evaluation by Captain Prince, which was negative, critiqued her for taking her sick leave and having "many" prior write-ups.

46. On **January 15, 2016,** the Plaintiff learned she was pregnant, and in late January she held a private meeting with Chief Hargett informing him and requesting him to keep her pregnancy private.

47.On **March 4 and 6, 2016,** the Plaintiff was followed and verbally harassed by Sergeant Franks.

48.  On **March 7, 2016**, the Plaintiff and her husband went to speak to the Chief of Police about the discriminatory harassment the Plaintiff suffered at the hands of her supervisor, Sergeant Franks.

49. **March 8, 2016**, the Plaintiff appeared before the Civil Service Board wherein they ruled she did not have the right to appeal the demotion decision, which is not based on policy.

50. On **March 10, 2016**, the Plaintiff was interviewed for the Sergeant position.

51. On **March 10, 2016**, twenty minutes after the interview, the Plaintiff received a written reprimand for "bypassing the chain of command" and "sleeping on duty", both of which were false or non-violations, and received a total of ten (10) days suspension without pay.

52. The policy clearly states that if the harassment is a supervisor an officer may go to the Chief with his or her complaints.

53. The Plaintiff states she had a headache and laid her head back in her chair, but was not asleep. She was told by Sergeant Franks she should go get another job.

54. Officers were told they could sleep on their shift if necessary and male officers slept on their shift on a regular basis without discipline.

55. On **March 10, 2016**, the Plaintiff requested an appeal of the disciplinary action to the Civil Service Board.

56. On **March 18, 2016,** the Plaintiff provided a doctor's excuse releasing her to work to work March 21, 2016.

57. On **March 21, 2016**, the City promoted male officer Reese Coan to fills the Plaintiff's Sergeant position.

58. Reese Coan was hired in May, 2011, six months prior to the Plaintiff, but he had only worked dispatch prior to his promotion and had no experience in the field.

59. On **March 21, 2016**, the Plaintiff's doctor put her on light duty due to the Plaintiff's pregnancy.

60. There is no "light duty" policy, the custom is if an officer has a temporary medical condition, he would have to utilize sick leave, unless there happens to be a position open.

61. It is also custom when an officer does not have sick time, other city employees may donate their own time to said officer.

62. At the time the Plaintiff was initially placed on "light duty" there was not a position open, and she was forced to use her sick time.

63. At the time the Plaintiff was placed on "light duty" she did not have enough sick time to cover her absence.

64. On **March 24, 2016**, the Plaintiff filed her second charge of discrimination alleging sex discrimination and retaliation, 420-2016-01692.

65. On **March 28, 2016**, the Plaintiff emailed all of her colleges requesting donations of time.

66. Upon information and belief, Police Department employees were instructed not to donate their time to the Plaintiff.

67. As a result of no Police Department employees donating time, the employees of the Fire Department, including the Fire Chief, began donating their time to the Plaintiff for her leave.

68. On **March 28, 2016,** the Civil Service Board notified the Plaintiff her hearing would be April 14, 2016.

69. On **March 31, 2016**, Chief Hargett wrote the Plaintiff's doctor refusing the excuse and asking for written clarification.

70. In **April, 2016,** the Plaintiff was told if there was a dispatch position available, she could perform those duties instead of using all of her and other employees' sick time.

71. From April, 2016 to June, 2016, the Plaintiff was required to take her, or other employees' available sick time.

72. In **June, 2016**, a dispatcher took leave and the Plaintiff was allowed to fill in on those shifts.

73. On **June 6, 2016**, the EEOC issued it's "Right to Sue" Letter for the Plaintiff's first charge of discrimination, 420-2016-00306.

74. In **June, 2016**, Officer Jessica Clements was approached by Captain Prince and Chief Hargett, and asked to place her name on the Sergeants list.

75. In **June, 2016**, the Plaintiff worked four (4) shifts at dispatch.

76. On **June 18, 2016**, the Plaintiff was 6 ½ month's pregnant and having back pains, so her husband brought her lunch and to check on her while she was working dispatch, and she was written up for violation of policy and removed from dispatch duties, which was the only light duty available, and suspended two paychecks.

77. The stated reason for the write-up was refusal to comply with written or oral orders.

78. The NCIC/ACIJIC rule cited in the write-up prohibited anyone other than trained personnel to be in view of the computers.

79. The Plaintiff's husband worked for the city and had been in dispatch hundreds of time in the past when the Plaintiff was not in there.

80. The Plaintiff's husband was not viewing the computer, as his chair was facing the opposite direction.

81. Furthermore, the Plaintiff was not running any tag numbers or license numbers for anyone during the time he was there.

82. Instead of just calling her to come in to the office to present the write up to the Plaintiff, Captain Prince held the Plaintiff's check.

83. EMS and Fire personnel come into dispatch anytime there is a medical call at the jail.

84. Dispatch officers had food brought to them by their spouses, who are not city employees, on a regular basis.

85. When there are meetings or a Christmas party, dispatch is manned by personnel of the Fire Department, and none of the Fire Department is NCIC/ACJIC certified.

86. On **June 23 2016**, the Plaintiff's husband took sick leave donation forms of himself and other Fire Department employees to Human Resources (HR) at City Hall pursuant to custom.

87. All other city employees have been instructed to take the forms straight to HR due to privacy, as the forms ask for rate of pay and hours donated along with their names and department.

88. On **June 29, 2016,** the Plaintiff met with Captain Prince, wherein he gave her a written counseling form instructing the Plaintiff if anyone turned in donation forms to anyone other than the Chief she would be severely disciplined.

89. When the Fire Department employees donated their time to the Plaintiff, the Chief only gave the Plaintiff half of what they donated.

90. Sick time is earned by hours (not days), and all of the hours are subtracted from the Fire Department employees' time, but only half of the hours were credited to the Plaintiff.

91. In late **August, 2016,** the two week suspension for the Plaintiff's husband bringing her lunch was upheld at the appeal hearing.

92. At the appeal hearing, Chief Hargett was placed on the stand wherein he admitted he banned the Plaintiff's husband because of his complaint of the department's discriminatory conduct towards his wife to the Mayor and her EEOC activity.

93. The Chairman of the Russellville Civil Service Board who heard the Plaintiff's appeal, Brandon James, is also the 911 director.

94. James' job oversees the 911 Center and employees under him.

95. Chief Hargett is on the 911 Board for Franklin County.

96. The 911 board hires and fires all employees of the 911 Center, including the director, rendering Chief Hargett Brandon James' boss.

97. The 911 board controls the financial budget for the 911 center, and controls what equipment is purchased for the department such as new vehicles or computer equipment.

98. On **September 1, 2016**, the Plaintiff had her baby, for which she chose to breastfeed.

99. On **September 6, 2016**, the Plaintiff filed civil action 3:16-cv-01466-MHH against the City alleging discrimination.

100.    On **October 12, 2016**, Captain Prince called the Plaintiff to come in while she was still out with her baby, and she was written up because her husband left the Fire Department donation forms at City Hall, and not Chief Hargett.

101.    On **November 7, 2016**, the Plaintiff came back to work, and she told Lt. Sheffield and Captain Prince that she was breastfeeding, and needed a place to pump at the station or go home to pump.

102.    Captain Prince said it was better if she went home to feed the baby, and to let her supervisors know when she needed to have a break.

103.    At first, the Plaintiff pumped two times on her shift which would take approximately 45 minutes.

104.    In **December, 2016**, two Sergeants quit, and the Plaintiff put her name in for said position.

105.    On **December 12, 2016**, Plaintiff received a written directive regarding break times.

106.    The Plaintiff would make up the time she missed at the end of her shift.

107.    The times the Plaintiff was in service or out of service was placed in the computer by the dispatch operator.

108.    The dispatcher would not always immediately put her times in the computer, so the times reflected weren't always accurate.

14

109. Sometimes the dispatcher would text her and ask if she was back in service because she forgot.

110. On **December 27, 2016**, Plaintiff received a counseling regarding break time.

111. In **January, 2017,** the Plaintiff went to a check-up with her baby, and she was instructed she needed to breastfeed instead of pump for the baby.

112. The Plaintiff worked a 12 hour shift, so she would feed him around 9:00 am, noon, and 4:00pm, which would take 15-20 minutes.

113. In **January, 2017**, the City of Russellville held the Sergeant interviews.

114. On **January 24, 2017**, the Plaintiff was called by Lt. Shackelford and told to go home at 10:00am, so that she could come back at midnight until noon or noon to midnight the next day to relieve another officer at Huntsville Hospital guarding a guy that had an attempted murder warrant.

115. The Plaintiff asked Lt. Shackelford how she was to pump on a 12 hour shift since she was not allowed to turn her back on the suspect, and her home is 1.5 hours away.

116. Lt. Shackelford said he would have to call her back.

117. The Plaintiff spoke with officer Josh Thompkins who stated he would gladly take her shift.

118.    Lt. Shackelford called back and asked which shift the Plaintiff wanted.

119.    The Plaintiff explained Officer Thompkins stated he would cover the shift, but Lt. Shackelford stated the Plaintiff had three options: midnight to noon, noon to midnight, or go home and turn your gear in and quit.

120.    The Plaintiff chose the midnight to noon shift, but spoke further with Lt. Shackelford asking how she is to express milk for her child, explaining she was not going to expose her breasts to the suspect, for which he explained she would have to figure something out.

121.    The Plaintiff explained the dangers of not expressing milk for 12-14 hours, such as infection and milk supply loss, and he responds it isn't his call, she will have to talk to the Captain.

122.    The Plaintiff contacted the Captain, but he did not respond so she left messages.

123.    Lt. Shackelford called the Plaintiff back and tells her he spoke with the Captain and they have decided to send a different officer, and that she will have to work 6:00pm to 6:00 am shift, and is told she has to work the night shift the next day to help out since she was not going to watch the suspect.

124.    On **February 6, 2017**, Lt. Shackelford told the Plaintiff should could not take her kids to and from school in her patrol car without permission from

Captain Prince, even all though other officers are allowed to take their children to and from school.

125.   On **February 6, 2017**, Craig Bullion and Jessica Clements are given the two open Sergeant positions.

126.   Craig Bullion graduated from the Academy December 16, 2015, and had been an officer for only one (1) year at the time of his promotion.

127.   Jessica Clements was hired after the Plaintiff.

128.   Neither Craig Bullion nor Jessica Clements had complained of discrimination prior to their promotions.

129.   The week of **February 20, 2017**, the Plaintiff, who was the 2nd senior officer, was told she was going to be going on night shift the following week, when a rookie was placed on her day shift in her place.

130.   The stated reason for the removal to night shift was that they could not have two females on the same shift.

131.   On **February 24, 2017**, a member of the Russellville City Council, Arthur Elliot asked Plaintiff to request a meeting with the council to discuss the discrimination the Plaintiff was suffering.

132.   On **March 6, 2017**, the Plaintiff went to a City Council meeting and discussed ongoing discriminatory conduct by her supervisor and others in the police department.

133.   On **March 7, 2017**, the Plaintiff texted Sergeant Miller that she was headed home to feed her baby, and he responded to come to the station first.

134.   When the Plaintiff arrived, she met with Captain Prince, Chief Hargett and Sergeant Miller, and Chief said at this time, you are going home, you are placed on paid administrative leave pending our decision on what happened last night.

135.   On **March 8, 2017**, the Plaintiff was called into the station and informed to bring all police department equipment with her.

136.   When Plaintiff arrived at the station, she was given the choice to resign or be terminated.

137.   The Plaintiff wrote a letter of resignation during this meeting.

138.   On **April 4, 2017,** the EEOC issued it's "Right to Sue" letter for the Plaintiff's Second Charge, 420-2016-01692.

139.   On **April 27, 2017,** the Plaintiff filed her third charge of discrimination, 420-2017-01721.

140.   On **May 18, 2017**, the EEOC issued its "Right to Sue" letter for the Plaintiff's Third Charge, 420-2017-01721.

**IV. CLAIMS**

**COUNT I-RETALIATION**

141.   The Plaintiff adopts and re-asserts each and every allegation contained in paragraph 1-140 as if fully set out herein.

142.   The Defendant retaliated against the Plaintiff when she objected to the unlawful discriminatory practices when the City:

a.   Banned her husband from the premises;

b.   Told other officers not to associate with the Plaintiff;

c.   Had supervisory officers following and harassing the Plaintiff;

d.   Provided her a negative evaluation on December 14, 2015;

e.   When they told her she should just quit her job;

f.   Wrote up the Plaintiff for false reasons or non-offenses on March 10, 2016 and suspended her for ten (10) days;

g.   Instructed officers in the Police Department not to donate their time to cover the Plaintiff's sick leave;

h.   Applied only half of the time donated by Fire Department employees to the Plaintiff;

i.   Wrote- up the Plaintiff for her husband taking the donation forms to HR in June, 2016, and suspended her for two weeks;

j.   Wrote up the Plaintiff for her husband taking the donation forms to HR in October, 2016;

k.   Wrote-up the Plaintiff for taking breaks to breastfeed her baby;

l.   Misapplied the time the Plaintiff was taking to breastfeed her baby and wrote-up;

m.    Punished the Plaintiff with nightshift when she inquired how she was going to breastfeed on a shift protecting a suspect;

n.    Attempted to permanently assign the Plaintiff to night shift;

o.    Placed two employees, with less seniority and experience than the Plaintiff, who had not complained of discrimination, in the Sergeant position;

p.    Placed the Plaintiff on paid administrative leave after her complaint to council; and

q.    Told the Plaintiff she had the choice of termination or resignation.

143.   The Defendant acted with malice and /or reckless indifference to the Plaintiff's federally protected rights.

144.   As a result of the Defendant's willful and unlawful violations of 42 U.S.C. 2000(e), the Plaintiff has been caused to suffer loss of wages or salary (front and back pay), loss of donated paid sick leave, loss of benefits, loss of seniority, loss of other compensation, loss of out of pocket expenses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, embarrassment, constructive discharge, and loss of career.

145. As a result of the Defendant's willful and unlawful violations of 42 U.S.C. 2000(e), the Plaintiff is seeking compensatory damages, attorney's fees, and costs of litigation.

## COUNT II-DISCRIMINATORY DISCHARGE

146. The Plaintiff adopts and re-asserts each and every allegation contained in paragraph 1-145 as if fully set out herein.

147. The Defendant created an environment that was so hostile toward the Plaintiff due to her gender and complaints of discrimination, the Plaintiff was constructively discharged.

148. After all of the conduct listed in paragraph 142(a)-(q) of this Complaint, the Plaintiff involuntarily resigned in order to escape intolerable and illegal employment decisions she was subjected to based on her gender.

149. The Plaintiff's working conditions became so intolerable that a reasonable person in her position would have felt compelled to resign.

150. As a result of the Defendant's willful and unlawful creation of a hostile work environment, the Plaintiff has been caused to suffer loss of wages or salary (front and back pay), loss of donated paid sick leave, loss of benefits, loss of seniority, loss of other compensation, loss of out of pocket expenses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, embarrassment, constructive discharge, and loss of career.

151. As a result of the Defendant's willful and unlawful violations of the Civil Rights Act of 1991, the Plaintiff is seeking compensatory damages, attorney's fees and costs of litigation.

## COUNT III- FLSA

152. The Plaintiff adopts and re-asserts each and every allegation contained in paragraph 1-151 as if fully set out herein.

153. The Defendant employs more than fifty (50) employees at the time of the alleged offenses.

154. The Plaintiff was breast feeding her newborn baby upon her return from leave for his birth.

155. The Defendant did not provide,

(A) a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk; and (B) a place, other than a bathroom, that is shielded from view and free from intrusion from co-workers and the public, which may be used by an employee to express breast milk.

Section 7 of the Fair Labor Standards Act of 1938, 29 U.S.C. 207, *as amended*

156. The Defendant counseled and wrote-up the Plaintiff for her use of breastfeeding breaks, and eventually used these write ups to unlawfully discharge the Plaintiff.

157. As a result of the Defendant's willful and unlawful violations of the FLSA, the Plaintiff has been caused to suffer loss of wages or salary (front and back

pay), loss of donated paid sick leave, loss of benefits, loss of seniority, loss of other compensation, loss of out of pocket expenses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, embarrassment, constructive discharge, and loss of career.

158.   As a result of the Defendant's willful and unlawful violations of the Civil Rights Act of 1991, the Plaintiff is seeking compensatory damages, liquidated damages, attorney's fees and costs of litigation.

## COUNT IV- GENDER DISCRIMINATION/ EQUAL PROTECTION -1983

159.   The Plaintiff adopts and re-asserts each and every allegation contained in paragraph 1-158 as if fully set out herein.

160.   The Plaintiff is a member of a protected class.

161.    The Defendant discriminated against Genrty in the terms, conditions, and privileges of employment when:

a.      Similarly situated male were allowed to sleep on duty without discipline;

b.      Similarly situated male employees were not followed or surveilled;

c.      Similarly situated male employees were allowed to have their spouses bring food to work without discipline;

d.      Similarly situated male employees were allowed to associate with their co-workers;

e.      Similarly situated male employees were given the opportunity to appeal disciplinary actions;

f.      Similarly situated male employees were allowed to swap shifts with employee without discipline;

g.      Similarly situated male employees were allowed to take their children to and from school in their patrol vehicle; and

h.      Similarly situated male employees could work with two males on the same shift.

162.   As a proximate cause and cause in act of said disparate treatment, the Plaintiff was caused to suffer the following injuries and damages:  loss of wages or salary (front and back pay), loss of donated paid sick leave, loss of benefits, loss of seniority, loss of other compensation, loss of out of pocket expenses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, embarrassment, constructive discharge, and loss of career.

163.   The Plaintiff is seeking compensatory damages, liquidated damages, attorney's fees and costs of litigation.

## **COUNT V- GENDER DISCRIMINATION/ EQUAL PROTECTION -1983**

**164.**   The Plaintiff adopts and re-asserts each and every allegation contained in paragraph 1-163 as if fully set out herein.

165.    After subjecting the Plaintiff to the conduct specified in paragraphs 142(a)-(q) and 161(a)-(h) of this Complaint, a reasonable person in the Plaintiff's position would find the conduct offensive, hostile or abusive, and created a hostile work environment.

166.    The Plaintiff subjectively felt her supervisors' conduct was offensive, hostile, abusive and created a hostile work environment.

167.    The Plaintiff subjectively felt her supervisors' conduct was severe enough to alter the terms and conditions of her employment.

168.    As a proximate cause and cause in act of said hostile work environment, the Plaintiff was caused to suffer the following injuries and damages: loss of wages or salary (front and back pay), loss of donated paid sick leave, loss of benefits, loss of seniority, loss of other compensation, loss of out of pocket expenses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, embarrassment, constructive discharge, and loss of career.

169.    The Plaintiff is seeking compensatory damages, liquidated damages, attorney's fees and costs of litigation.

## V-DAMAGES

1.    The plaintiff has suffered loss of wages or salary (front and back pay), loss of donated paid sick leave, loss of benefits, loss of seniority, loss of other compensation, loss of out of pocket expenses, emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, embarrassment, constructive discharge, and loss of career as a consequence of the defendant's unlawful conduct.

## VI. PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.      Enter an Order requiring the defendant to make the plaintiff whole by awarding her compensatory and punitive damages including, but not limited to: lost wages (back and future plus interest), out of pocket expenses, emotional distress, loss of benefits, including retirement, pension, seniority, loss of career and other benefits of employment.

2.      The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses.

3.      The Plaintiff further prays for any other relief as justice so requires.

## THE PLAINTIFF DEMANDS A JURY TRIAL

Respectfully Submitted,

Patricia A. Gill, Attorney for the
Plaintiff

OF COUNSEL

PATRICIA A. GILL, P.C.
PO BOX 55304
BIRMINGHAM, AL 35255
(205) 307-9555
patriciagill@yahoo.com

## SERVE DEFENDANT BY CERTIFIED MAIL AT:
City of Russellville
Care of City Clerk
304 N. Jackson Avenue
Russellville, AL 35653